```
 1                    UNITED STATES BANKRUPTCY COURT

 2              CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

 3                              --oOo--

 4   In Re:                           )
                                      ) Case No. 2:18-bk-10443-BR
 5                                    )
     ECLIPSE BERRY FARMS, LLC, and    ) Chapter 11
 6   HARVEST MOON STRAWBERRY,         )
                                      ) Los Angeles, California
 7                Debtors.            )
                                      ) Tuesday, August 21, 2018
 8   -----------------------------X 2:00 P.M.

 9                                    HEARING RE: OBJECTION TO
                                      CLAIM 7 BY CLAIMANT GUSTAVO
10                                    VEGA MORALES IN THE AMOUNT OF
                                      $11,529.83
11
                                      HEARING RE: OMNIGUS OBJECTION
12                                    FOR ORDER DISALLOWING LATE-
                                      FILED CLAIMS
13
                                      HEARING RE: OBJECTION FOR
14                                    ORDER DISALLOWING CLAIMS

15                                    ==HEARING RE: OBJECTION TO
                                      CLAIM #16 BY CLAIMANT HAROLD
16                                    CRAWFORD CO., INC./ARGO
                                      PARTNERS IN THE AMOUNT OF
17                                    $76,896.93==

18                                    HEARING RE: OBJECTION CLAIM 3
                                      BY CLAIMANT PAULINA LOPEZ
19                                    LOPEZ, IN THE AMOUNT OF
                                      $7,701.50
20
                                      HEARING RE: OBJECTION TO
21                                    CLAIM 4 BY CLAIMANAT ARACELI
                                      ZARAGOZA OSORIO IN THE AMOUNT
22                                    OF $7,817.01

23

24
     Proceedings produced by electronic sound recording;
25   transcript produced by transcription service.
```

P 888.272.0022  F 818.343.7119        www.benhyatt.com

```
 1                              HEARING RE: OBJECTION TO
                                CLAIM 5 BY CLAIMANT CESAR
 2                              ZARAGOZA OSORIO IN THE AMOUNT
                                OF $6,782.47
 3
                                HEARING RE: OBJECTION TO
 4                              CLAIM 6 BY CLAIMANT ROSAELIA
                                LOPEZ LOPEZ IN THE AMOUNT OF
 5                              $24,172.52

 6
                    TRANSCRIPT OF PROCEEDINGS
 7             BEFORE THE HONORABLE BARRY RUSSELL
                UNITED STATES BANKRUPTCY JUDGE
 8

 9   APPEARANCES:

10   For the Debtor:           BARRY A. CHATZ, ESQ.
                               Saul Ewing Arnstein & Lehr
11                             161 North Clark
                               Suite #4200
12                             Chicago, Illinois  60601

13   For Harold Crawford:      DAVID B. SHEMANO, ESQ.
                               Shemano Law
14                             1801 Century Park East
                               Suite #1600
15                             Los Angeles, California  90067

16   For the Wage Claimants:   J. RAUL ALCANTAR, ESQ.
                               Nassiri & Jung, LLP
17                             47 Kearney Street
                               Suite #700
18                             San Francisco, California  94108

19   For the Official          JOHN-PATRICK M. FRITZ, ESQ.
     Committee of Unsecured    Levene Neale Bender Yoo &
20   Debtors:                    Brill, LLP
                               10250 Constellation Boulevard
21                             Suite #1700
                               Los Angeles, California  90067

22

23

24

25
```

```
 1  Court Recorder:          Wanda Toliver
                             U.S. Bankruptcy Court
 2                           Central District of California
                             Edward R. Roybal Federal Building
 3                             and Courthouse
                             255 East Temple Street, Room #1639
 4                           Los Angeles, California  90012
                             (855) 460-9641
 5
     Court Transcriptionist: Ruth Ann Hager, C.E.T.**D-641
 6                           Ben Hyatt Certified Deposition
                               Reporters
 7                           17835 Ventura Boulevard, Suite 310
                             Encino, California  91316
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Page                                                                    4

1          LOS ANGELES, CALIFORNIA, TUESDAY, AUGUST 21, 2018
2                              2:43 P.M.
3                              --oOo--
4          THE CLERK:  #34.00 through #44.00, Eclipse Berry
5    Farms.
6          MR. CHATZ:  Good afternoon, Your Honor.  Barry
7    Chatz for the debtors.
8          MR. ALVANTAR:  Good afternoon, Your Honor.  Raul
9    Alcantar for the wage claimants.
10         THE COURT:  Okay.
11         MR. FRITZ:  Good afternoon, Your Honor.  JP
12   Fritz, Levene, Neale, Bender, Yoo & Brill for the Official
13   Committee of Unsecured Creditors.
14         THE COURT:  Okay.
15         MR. SHEMANO:  Good afternoon, Your Honor.  David
16   Shemano of Shemano Law on behalf of Harold Crawford
17   Company, which is matter #39.00.
18         THE COURT:  All right.  Okay.
19         MR. CHATZ:  Your Honor, we could do this by
20   number or --
21         THE COURT:  It doesn't really matter.  You know,
22   it's almost happenstance.  In fact, it is.
23         MR. CHATZ:  Yeah, it kind of is, so --
24         THE COURT:  Usually how they get set on the
25   calendar is no bearing on anything other than they all

```
Page                                                                18
```

1          MR. CHATZ:  Yeah.  You're welcome to stay.
2          THE COURT:  -- but I think you probably have
3   better things to do.
4          MR. ALVANTAR:  Well, thank you, Your Honor.
5          THE COURT:  Yes.
6          MR. CHATZ:  Appreciate it.
7          THE COURT:  Yes.
8          MR. CHATZ:  We have #39.00.
9          THE COURT:  All right.
10         MR. CHATZ:  Which is the Harold Crawford fully
11  briefed objection.
12         THE COURT:  Right.  And as Your Honor and I have
13  discussed before, PACA is very specific.  It needs to be
14  followed strictly.  We hired special counsel in this case
15  because of its unique nature and this case specifically I
16  don't think there's a dispute.  There's no executed
17  confirmation of any relationship --
18         THE COURT:  I understand.
19         MR. CHATZ:  -- so I don't know -- we'd ask that
20  our objection be sustained.
21         THE COURT:  All right.
22         MR. SHEMANO:  Your Honor?
23         THE COURT:  Yes.
24         MR. SHEMANO:  I'd like to respond to an argument
25  in the reply papers that we didn't --

Page                                                                19

1           THE COURT:  All right.
2           MR. SHEMANO:  -- get the opportunity to respond
3  to.  I think there is -- and I will assume some
4  responsibility for not identifying this confusion in our
5  initial objection, but there's a fundamental confusion here
6  about two separate parts of the regulation.  And whether
7  intentionally or unintentionally they're conflating two
8  separate parts of the regulation.  Now, I'd just like to
9  explain it and I think it will hopefully help you
10 adjudicate this dispute.
11          The regulation talks about the duty of the broker
12 to prepare this confirmation memorandum after the parties
13 reach their deal and that the confirmation memorandum is
14 supposed to state who the broker was the broker for.
15          THE COURT:  All right.
16          MR. SHEMANO:  And then the regulation says if the
17 confirmation or memorandum of sale does not contain such
18 information the broker shall be presumed to engage by the
19 buyer.  And they're the seller; the other party is the
20 buyer and that's where they say, well, you didn't do that
21 so you're not the broker for us.  Therefore, you lose.
22          And, Your Honor, I will concede that for purposes
23 of this hearing and for purposes of this statute that
24 Harold Crawford did not send a confirmation memorandum
25 stating that they are the broker for the debtor and,

Page                                                                20

1  therefore, the debtor is liable for the brokerage fee.  I
2  will concede that.
3           THE COURT:  The debtor is not liable for --
4           MR. SHEMANO:  Not liable as the broker because
5  the statute says --
6           THE COURT:  I understand.
7           MR. SHEMANO:  -- the confirmation or memorandum
8  of sale does not contain such information.  Right?  The
9  broker shall be presumed to be engaged (phonetic) by the
10 buyer.
11          THE COURT:  Right.
12          MR. SHEMANO:  And then it says -- this is the key
13 provision that they did not highlight to you and I
14 apologize, we did not highlight to you.  It says:
15          "Unless otherwise agreed and confirmed, the
16     broker will be entitled to payment of brokerage fees
17     from the party by whom it was engaged to act as
18     broker."
19          So their saying is, okay, you didn't comply
20 with -- you didn't set a confirmation of memorandum rights,
21 so that means you're presumed to be the broker for the
22 buyer and therefore presumptively the buyer has to pay you,
23 not us.  I get that.  But this regulation says, "unless
24 otherwise agreed and confirmed."
25          So what the regulation says is, there's no

```
Page                                                              21
 1  statutory PACA requirement that the broker only be paid by
 2  the buyer or by the party who engaged --
 3             THE COURT:  But you have to put it --
 4             MR. SHEMANO:  -- the broker.
 5             THE COURT:  But you've got to put it in writing
 6  and who will be paid --
 7             MR. SHEMANO:  No, no, no, no.  It only says you
 8  have to put -- if you want to say that you are the -- if
 9  you want to overcome the presumption -- there's a
10  presumption that the buyer pays the brokerage fee.
11             THE COURT:  Right.
12             MR. SHEMANO:  Then there's a presumption that if
13  you don't do a confirmation memorandum, the buyer -- you
14  work for the buyer.  So --
15             THE COURT:  I understand.
16             MR. SHEMANO:  There's a presumption.  But then it
17  says there's no requirement under PACA that the buyer pay
18  the broker fee or even that the party who engaged the
19  broker paid the broker fee.  It's only a presumption unless
20  otherwise agreed by the parties.  That's what the
21  regulation says.
22             THE COURT:  All right.
23             MR. SHEMANO:  So what we have here, Your Honor --
24  and it's undisputed, all right.  It's not a factual
25  dispute.  There's a factual dis -- there's a fact -- a fact
```

Page                                                        22

1  that Harold Crawford is engaged by the buyer.  Says, look,
2  we have something, we want to sell it -- want to buy it.
3  Go in the market, find somebody to sell it to us.  That's
4  all done by Harold Crawford.  They do the service.  And
5  there's an understanding, which we describe as a course of
6  dealing between the parties traditional in the industry
7  that the parties know who's going to pay the fee.  It's all
8  done -- both documented as part of the transaction
9  electronically.  And at the conclusion of that they get an
10 invoice saying, we're the broker.  Part of the deal is you
11 pay the per carton fee.  And that's the way it was done,
12 Your Honor, for over ten years without dispute.
13         This $79,000 claim is just an add-on to over a
14 million dollars of work in which Harold Crawford engaged as
15 the broker in deals in which they're the seller.  So
16 they're making a hype -- they're not saying, we didn't --
17 my client did not provide the brokerage service.  They're
18 not --
19         THE COURT:  I understand that.
20         MR. SHEMANO:  Right.
21         THE COURT:  I've read all the papers.  I reviewed
22 them --
23         MR. SHEMANO:  Right, right.  But neither party
24 highlighted that part of the regulation that said even if
25 you do not comply with the confirmation matter (phonetic),

Page                                                              23

1   so that means you are presumed to be the broker for the
2   buyer and the buyer is presumed to be the party who's going
3   to pay you.  The parties can agree otherwise.  And because
4   of that --
5           THE COURT:  You're saying by a course of conduct
6   they agreed.  Is that your argument?
7           MR. SHEMANO:  Absolutely.  By whom --
8           THE COURT:  No, I understand.
9           MR. SHEMANO:  Well, absolutely.  There is no --
10  we agreed.  There is no writing over 15 years -- over 12
11  years of conduct that said in advance, you're going to pay
12  it.  It's all done through the after-the-fact invoice.
13  They've always paid it.  We've always relied upon it.
14          THE COURT:  I understand.
15          MR. SHEMANO:  And if -- and -- so I'd point out,
16  this (indiscernible) on the industry and if we rule -- if
17  you rule that that's not good enough, I mean, really,
18  really -- because then upset kind of a market course.  This
19  is how people do it.  I just -- we have to get --
20  clients -- time to get compensated from somebody and
21  they -- their course of conduct said they agreed we're
22  going to benefit from your service; they should pay it.
23          THE COURT:  All right.  Thank you.  Well, you --
24  that's what I understood your argument all along.
25          MR. SHEMANO:  Yeah.

```
Page                                                              24
 1              THE COURT:   What about that?
 2              MR. CHATZ:   We responded in our pleadings and the
 3   pleadings said you didn't evidence this, there's no --
 4              THE COURT:   But in all fairness --
 5              MR. CHATZ:   There's no con --
 6              THE COURT:   There's claim --
 7              MR. CHATZ:   There's no confirmation.
 8              THE COURT:   Wouldn't it be -- I mean, I
 9   understand that --
10              MR. CHATZ:   This is post-CRO work.  They know
11   what the rules are.
12              THE COURT:   Yeah, but CRO went down a long time
13   ago.  When did that one come into effect?
14              MR. CHATZ:   In 2017.
15              THE COURT:   What, the new statute?
16              MR. CHATZ:   No, the package statutes were --
17              THE COURT:   Oh, no, no, no.  See --
18              MR. CHATZ:   Package statutes were well before we
19   were born.
20              THE COURT:   The statute was amended, what, 20 or
21   whatever --
22              MR. CHATZ:   Yeah, exactly.
23              THE COURT:   So you're talking about --
24              MR. CHATZ:   I --
25              THE COURT:   -- the CRO came in because of the --
```



```
Page                                                                    25
 1  well, there was a death of -- to parties and I --
 2              MR. CHATZ:   Right.
 3              THE COURT:   The history of it.
 4              MR. CHATZ:   I don't think course of conduct is
 5  relevant --
 6              THE COURT:   Well --
 7              MR. CHATZ:   -- to the statute.  The statute is
 8  rather specific.
 9              THE COURT:   But you did read --
10              MR. CHATZ:   The cal --
11              THE COURT:   Counsel just read the statute.
12              MR. CHATZ:   Yeah, and the statute says --
13              THE COURT:   Unless otherwise --
14              MR. CHATZ:   -- unless otherwise agreed.
15              THE COURT:   -- agreed.  And he's arguing that
16  the -- otherwise agreed by years of agreement that this is
17  how it's going to work.  I mean, that's basically the
18  argument.
19              MR. CHATZ:   But I don't think that you override
20  the particular terms as Your Honor looked at it when we
21  filed our response.  He's re-arguing what he argued in his
22  response.  And the statute is rather clear; there do need
23  to have a confirmation of sale.  In order to collect --
24              THE COURT:   And unless -- again, unless --
25              MR. CHATZ:   In order to coll --
```

Page                                                                26

1            THE COURT:  Let me stop you.  Unless as
2   otherwise --
3            MR. CHATZ:  They --
4            THE COURT:  -- agreed by the parties.
5            MR. CHATZ:  They filed a proof of claim under
6   PACA.  They did it -- if they had a different proof of
7   claim they wished to file they could have done it.
8            THE COURT:  Well, the claim is for fees.  I'm not
9   sure.  Does it matter if it's under PACA?
10           MR. CHATZ:  I -- PACA -- PACA is the specific
11  statute.
12           THE COURT:  The way I read it the claim -- and
13  everybody knows, you know, what the claim is for.
14           MR. CHATZ:  Excuse me.  My --
15           THE COURT:  Whether it's technically in the PACA
16  or whatever, sure.  I had some familiarity.  Not nearly as
17  much as you gentlemen, but over the years I have some
18  familiarity how PACA works.
19           But don't you think that again from his
20  standpoint the -- it's obvious.  I'm not faulting anybody.
21  I agree with the complaint -- the claim.  Just so I
22  understand the way it worked, here is this stepping back as
23  I get to do as the judge of what's really going on here and
24  say, well, something new.  People coming in.  I guess after
25  the original people that set up the business died.  To say

```
Page                                                              27
```

1  the least, unfortunate.  They now suddenly realize it was
2  improper.
3              But the fact of the matter is that the -- that if
4  you really wanted to change things wouldn't it be a good
5  thing to change things before he went out and did the work?
6              MR. CHATZ:  Your Honor, they always had a right
7  to get paid by the seller.  If you could give me one
8  second, my client, the CRO, is here.  He's a PACA expert
9  here.  We don't have our PACA lawyer here.  If you wish to
10 file the surreply, I wish he would have.  Could you give me
11 one second?
12             THE COURT:  Well, no, let me stop you.  This is
13 not -- this is a hearing on -- this is a motion --
14 objection on the facts of --
15             MR. CHATZ:  Right.  This is the facts.  The facts
16 are --
17             THE COURT:  Yeah.
18             MR. CHATZ:  -- in our view the statute is a bar
19 to their claim.
20             THE COURT:  Okay.  Well, I disagree.  Again, and
21 so this is not -- you know, I am not faulting anybody.  To
22 say the least how this developed with the death of the
23 people starting this wonderful business and so forth.  But
24 it appeared to be that, yes, I -- I agree with the claimant
25 that -- that is an agreement, that is, a course of conduct

```
Page                                                           28
 1   over years.  You can have a seat.  There's not --
 2            MR. CHATZ:  Oh, no, that's fine.
 3            THE COURT:  -- a debate.  But it does seem to me
 4   my -- I'm the only, again, neutral person here on this.  It
 5   seems to me -- I understand the arguments and that -- but
 6   the fact of the matter is this is how things were done and
 7   if things were -- want to be changed, it should have been
 8   changed.  Any notice to the claimant prior to doing the
 9   efforts would have done it.  I'm not faulting anybody for
10   not doing it.  There's a lot more important things quite
11   frankly going on in this case, namely selling all the
12   berries and all the things.  And so I understand.  I'm not
13   faulting anybody.
14            But I'm going to overrule the objection to the
15   claim.  I think the claim is --
16            MR. CHATZ:  Okay.  Thank you, Your Honor.
17            THE COURT:  -- well taken.  Interesting.  I must
18   admit it was an interesting case but I had already -- that
19   was my leaning in any way before, so -- but I think that
20   there was that implicit agreement, so that -- of all of
21   them, this was the most interesting reading through all of
22   this.
23            So anyway, it is -- it is what it is and so
24   there's -- not going to take anymore testimony.  That's the
25   wonderful thing about doing this.  The facts as I know are
```

Page                                                                29

1   on the table and so that's what I'm going to do.
2           MR. CHATZ:  I just wanted for clarification this
3   is being treated as an unsecured claim.
4           THE COURT:  Oh, yeah.
5           MR. CHATZ:  Thank you.
6           THE COURT:  Well, yes, yes.  It's -- yes.
7   Remember this is not -- he hasn't -- he's -- right.  The
8   difference between selling berries and things and having a
9   PACA claim, yes, this is -- yeah, I guess you understand
10  that.  That's obviously -- this is not a --
11          MR. SHEMANO:  We understand that.  We --
12          THE COURT:  Yeah, this is a claim for its fees.
13  Right.  It's not the -- it's not --
14          MR. SHEMANO:  It's for a claim on the contract.
15          THE COURT:  Right, right.  On the contract, yes.
16          MR. CHATZ:  All right.  Thank you.
17          THE COURT:  Yeah.  Okay.  I thought that was
18  obvious, but nothing is --
19          MR. CHATZ:  I just want to make sure it's clear.
20          THE COURT:  Yeah.  No, no, he's not claiming any
21  security on the -- he does -- he has not provided
22  perishable goods.  Yeah.
23          So anyway, so that's going to be -- if you'll
24  prepare that order --
25          MR. CHATZ:  Yes.

```
Page                                                       30
 1           THE COURT:  -- I've stated it on the record.  I
 2  don't think you need --
 3           MR. CHATZ:  We'll prepare the order, Your Honor.
 4           MR. SHEMANO:  We'll work on it together.
 5           THE COURT:  I think -- I mean, it isn't that I
 6  don't trust you, but I -- you can work it out, but it's
 7  very simple.  You don't have to state -- oh, you can state
 8  it on the record I've stated the reasons on the record --
 9           MR. CHATZ:  Right.
10           THE COURT:  -- and the claim is allowed.  Your
11  objection is overruled.  That's a one-liner.  I can do
12  it --
13           MR. CHATZ:  No, I don't want you to have to do
14  that.  There's a question, though, with respect to fees and
15  interest on this claim --
16           THE COURT:  I wasn't even focusing on that.  It
17  was just the amount of the claim.
18           MR. CHATZ:  Right.  And if it's just the amount
19  of the claim --
20           THE COURT:  That's all I'm talking about.  Wasn't
21  that --
22           MR. CHATZ:  -- we're filing (indiscernible)
23  penalties and interest --
24           THE COURT:  -- it?
25           MR. SHEMANO:  No, there's a small portion of the
```

Case 2:18-bk-10443-BR    Doc 558-1    Filed 09/04/18    Entered 09/04/18 13:15:54    Desc
A - Transcript of 8/21 Hearing    Page 18 of 20

Page                                                                31

1   claim amount that includes interest because the claim has
2   not been paid.
3              THE COURT:  Right, right.  And --
4              MR. SHEMANO:  Well, not --
5              THE COURT:  Prepetition interest.
6              THE COURT:  Yeah, prepetition interest.  Right.
7   That would be entitled.
8              MR. SHEMANO:  And there's a claim for a few
9   thousand dollars of attorney's fees dealing with the claim
10  and that's --
11             THE COURT:  Well, that -- that is a little bit --
12  I've forgotten about that.  Since there's no contract I
13  don't see being entitled to attorney's fees.
14             MR. SHEMANO:  Well, there is an argument under
15  PACA.  I think what we'll do, Your Honor --
16             THE COURT:  Well, I can tell you without -- I
17  would not allow the attorney's fees.  The interest is what
18  it is and -- on the debt basically.  I'll leave it at that.
19             MR. SHEMANO:  Okay, Your Honor.  We'll --
20             THE COURT:  Because I'd rather -- I want to get
21  it done today.
22             MR. SHEMANO:  Understood.
23             THE COURT:  I don't want --
24             MR. SHEMANO:  We'll solve this.
25             THE COURT:  Okay.

```
Page                                                               32
 1              MR. CHATZ:  Thank you, Your Honor.
 2              THE COURT:  Okay.  Thank you very much.
 3              MR. CHATZ:  Okay.  Back to claim #35.00, Your
 4   Honor.
 5              THE COURT:  Okay.
 6              MR. CHATZ:  Two of the matters were resolved --
 7   actually three now have been resolved:  Gregorio Martinez,
 8   BNSF and Vegetable Growers.  As to the others we'd like to
 9   submit a draft order disallowing all of them because
10   they've done --
11              THE COURT: All right. Right. Because I thought
12   we had already --
13              MR. CHATZ:  -- respond --
14              THE COURT:  -- the only one I had a question
15   about was the one -- the late filed claim --
16              MR. CHATZ:  Right.
17              THE COURT:  -- that yes, absolutely.
18              MR. CHATZ:  Thank you.  As to claim #36.00,
19   Travelers where they filed an unliquidated claim in
20   multiple -- in all three of the cases --
21              THE COURT:  Right.
22              MR. SHEMANO:  -- we're going to with Your Honor's
23   permission file a draft order disallowing all those claims.
24              THE COURT:  All right.  Yes.
25              MR. CHATZ:  We've not received a response on that
```

P 888.272.0022  F 818.343.7119       www.benhyatt.com

```
Page                                                            36
 1            THE COURT:  And quickly as well.
 2            MR. CHATZ:   -- on October 3rd on the
 3   confirmation.
 4            THE COURT:  Yes.
 5            MR. CHATZ:   Thank you.
 6            THE COURT:  Thank you very much.
 7   (End at 3:14 p.m.)
 8                      * * * * * * *
 9            I certify that the foregoing is a correct
10   transcript from the electronic sound recording of the
11   proceedings in the above-entitled matter.
12
13   - [signature]
14   _____    Date:  8/31/2018
15   RUTH ANN HAGER, C.E.T.**D-641
16
17
18
19
20
21
22
23
24
25
```

