1                    UNITED STATES BANKRUPTCY COURT

2            CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

3                            --oOo--

4    In Re:                    )
                               ) Case No. 2:18-bk-10443-BR
5                              )
     ECLIPSE BERRY FARMS, LLC, and ) Chapter 11
6    HARVEST MOON STRAWBERRY,   )
                               ) Los Angeles, California
7               Debtors.       )
                               ) Tuesday, August 21, 2018
8    ---------------------------X 2:00 P.M.

9                              HEARING RE: OBJECTION TO
                               CLAIM 7 BY CLAIMANT GUSTAVO
10                             VEGA MORALES IN THE AMOUNT OF
                               $11,529.83
11
                               HEARING RE: OMNIGUS OBJECTION
12                             FOR ORDER DISALLOWING LATE-
                               FILED CLAIMS
13
                               HEARING RE: OBJECTION FOR
14                             ORDER DISALLOWING CLAIMS

15                             HEARING RE: OBJECTION TO
                               CLAIM #16 BY CLAIMANT HAROLD
16                             CRAWFORD CO., INC./ARGO
                               PARTNERS IN THE AMOUNT OF
17                             $76,896.93

18                             HEARING RE: OBJECTION CLAIM 3
                               BY CLAIMANT PAULINA LOPEZ
19                             LOPEZ, IN THE AMOUNT OF
                               $7,701.50
20
                               HEARING RE: OBJECTION TO
21                             CLAIM 4 BY CLAIMANAT ARACELI
                               ZARAGOZA OSORIO IN THE AMOUNT
22                             OF $7,817.01

23

24
     Proceedings produced by electronic sound recording;
25   transcript produced by transcription service.



```
 1                              HEARING RE: OBJECTION TO
                                CLAIM 5 BY CLAIMANT CESAR
 2                              ZARAGOZA OSORIO IN THE AMOUNT
                                OF $6,782.47
 3
                                HEARING RE: OBJECTION TO
 4                              CLAIM 6 BY CLAIMANT ROSAELIA
                                LOPEZ LOPEZ IN THE AMOUNT OF
 5                              $24,172.52

 6
                      TRANSCRIPT OF PROCEEDINGS
 7             BEFORE THE HONORABLE BARRY RUSSELL
                 UNITED STATES BANKRUPTCY JUDGE
 8

 9    APPEARANCES:

10    For the Debtor:          BARRY A. CHATZ, ESQ.
                                Saul Ewing Arnstein & Lehr
11                             161 North Clark
                                Suite #4200
12                             Chicago, Illinois  60601

13    For Harold Crawford:     DAVID B. SHEMANO, ESQ.
                                Shemano Law
14                             1801 Century Park East
                                Suite #1600
15                             Los Angeles, California  90067

16    For the Wage Claimants:  J. RAUL ALCANTAR, ESQ.
                                Nassiri & Jung, LLP
17                             47 Kearney Street
                                Suite #700
18                             San Francisco, California  94108

19    For the Official         JOHN-PATRICK M. FRITZ, ESQ.
      Committee of Unsecured   Levene Neale Bender Yoo &
20    Debtors:                   Brill, LLP
                                10250 Constellation Boulevard
21                             Suite #1700
                                Los Angeles, California  90067

22

23

24

25
```



```
 1   Court Recorder:          Wanda Toliver
                              U.S. Bankruptcy Court
 2                            Central District of California
                              Edward R. Roybal Federal Building
 3                               and Courthouse
                              255 East Temple Street, Room #1639
 4                            Los Angeles, California  90012
                              (855) 460-9641
 5
     Court Transcriptionist:  Ruth Ann Hager, C.E.T.**D-641
 6                            Ben Hyatt Certified Deposition
                                 Reporters
 7                            17835 Ventura Boulevard, Suite 310
                              Encino, California  91316
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Page                                                                    4

1          LOS ANGELES, CALIFORNIA, TUESDAY, AUGUST 21, 2018

2                                2:43 P.M.

3                                --oOo--

4          THE CLERK:  #34.00 through #44.00, Eclipse Berry

5    Farms.

6          MR. CHATZ:  Good afternoon, Your Honor.  Barry

7    Chatz for the debtors.

8          MR. ALVANTAR:  Good afternoon, Your Honor.  Raul

9    Alcantar for the wage claimants.

10         THE COURT:  Okay.

11         MR. FRITZ:  Good afternoon, Your Honor.  JP

12   Fritz, Levene, Neale, Bender, Yoo & Brill for the Official

13   Committee of Unsecured Creditors.

14         THE COURT:  Okay.

15         MR. SHEMANO:  Good afternoon, Your Honor.  David

16   Shemano of Shemano Law on behalf of Harold Crawford

17   Company, which is matter #39.00.

18         THE COURT:  All right.  Okay.

19         MR. CHATZ:  Your Honor, we could do this by

20   number or --

21         THE COURT:  It doesn't really matter.  You know,

22   it's almost happenstance.  In fact, it is.

23         MR. CHATZ:  Yeah, it kind of is, so --

24         THE COURT:  Usually how they get set on the

25   calendar is no bearing on anything other than they all

Page                                                                    5

1   relate to -- I know, so we can just do them --

2            MR. CHATZ:  Why don't I do things that are easily

3   resolved and then we'll --

4            THE COURT:  Well, a lot of these, by the way --

5   in fact, all of the claims except for the amount of the

6   wage folks are the identical objection.

7            MR. CHATZ:  Yes, correct.

8            THE COURT:  So --

9            MR. CHATZ:  Why don't we start with --

10           THE COURT:  So we can take them all --

11           MR. CHATZ:  Why don't we start with number --

12           THE COURT:  -- at least with --

13           MR. ALVANTAR:  Your Honor, (indiscernible)

14   incorrect, Your Honor.  I apologize.  I represent the wage

15   claimants.  There was one objection made to one of the

16   claims on the basis of it being late filed, so that is --

17           THE COURT:  Oh, right, right, right.

18           MR. CHATZ:  Correct.  So there's -- these are --

19           THE COURT:  Which one?  I don't remember.  You're

20   right.

21           MR. CHATZ:  Yes.

22           THE COURT:  Which -- I don't remember which --

23           MR. CHATZ:  These are #34.00, #35.00, the late

24   claim filed by Gregorio Martinez.

25           MR. ALVANTAR:  Correct.

Page                                                                6

1              THE COURT:  And #40.00 through #44.00 are all the

2   wage issues.

3              THE COURT:  Well, there was a stipulation filed

4   in #35.00.

5              MR. CHATZ:  Yes, that related to BNSF.  There

6   were -- and under #35.00 there were 11 parties, actually

7   12.  And with respect to the employee claims that's one of

8   the parties of the 12 in the late filed --

9              THE COURT:  Okay.

10             MR. CHATZ:  -- omnibus objections.

11             THE COURT:  Okay.  So what about the late filed

12  one?  Which number is -- where --

13             MR. CHATZ:  Well, as we've talked about it, I

14  know the papers kind of reflect it, we are fine to pay the

15  wages, the issue --

16             THE COURT:  For the late filed one?

17             MR. CHATZ:  Even for the late filed one.

18             THE COURT:  Well, that's what I thought.  I

19  thought maybe I missed something and it's the other -- it's

20  the other --

21             MR. CHATZ:  It's the penalties --

22             THE COURT:  Penalties and interest and all.

23             MR. CHATZ:  That's the issue.

24             THE COURT:  Okay.  So far -- so far as the late

25  filed one you had agreed to the extent it's allowable?

Page                                                                    7

1              MR. CHATZ:  To the extent that we know what about

2    is, which we do with respect to Mr. Martinez.  That's fine.

3              THE COURT:  Okay.  Okay.  That's fine, then.

4    Okay.  So I don't have to separately deal with the --

5              MR. ALVANTAR:  I --

6              THE COURT:  That's what I thought you had said.

7              MR. ALVANTAR:  Based on the debtor's

8    representation --

9              THE COURT:  Okay.

10             MR. ALVANTAR:  -- I don't believe so, Your Honor.

11             THE COURT:  All right.  Okay.  So now we're back

12   to the -- one thing that was surprising and, in fact, the

13   debtor totally ignored it and I saw there was no basis for

14   it, but one of the things on the objections were that the

15   word "paid enough," it was a violation of law but with no

16   basis whatsoever for that.  It was just an argument.  The

17   debtor totally didn't even respond to it.  Do you know what

18   I'm talking about?

19             MR. CHATZ:  Yes, but --

20             THE COURT:  And there was nothing --

21             MR. CHATZ:  There was never a historical issue

22   regarding --

23             THE COURT:  No, there was no facts or anything.

24   It was just an argument.  Right?  I was surprised you

25   didn't at least say something about it.  I looked at it.

1   There's no evidence of that, is there?  It's like you just

2   threw that in.

3            MR. ALVANTAR:  Excuse me, Your Honor.  That the

4   debtor did not pay enough? zx

5            THE COURT:  No, no, no.  No, that they were not

6   paid a minimum wage.  It was just kind of thrown in.

7            MR. ALVANTAR:  Yes, Your Honor.  That's a

8   function of the inability to negotiate a check.  So under

9   state law in the *DeSchieke* (phonetic) case we cited in our

10  opposition makes clear that --

11           THE COURT:  No, no, no.  Different argument.

12  Talking about totally different was not to pay the minimum

13  wage.  A total paragraph and I -- just there.  You know

14  what I'm talking about?

15           MR. ALVANTAR:  Yes, for liquidated damages, Your

16  Honor.

17           THE COURT:  No, no.  Not --

18           MR. CHATZ:  This is what we're concerned about.

19  We tendered payment of what was --

20           THE COURT:  No, you understand it was a paragraph

21  I'm talking about.

22           MR. CHATZ:  I understand.

23           THE COURT:  And the opposition had to do with,

24  and by the way, they're not paying the minimum wage.  It's

25  nothing to do with what either of you just said.

Page                                                                        9

1          MR. CHATZ:  Well, we believe we paid the

2    appropriate wages --

3          THE COURT:  No, but you didn't even -- what I'm

4    saying is, I read it and I'm looking for some meat to it of

5    why you even made the argument.  I could find nothing in

6    any of the evidence and you didn't even respond to it.  I

7    just want to make sure that I didn't miss something as far

8    as paying minimum wage.

9          MR. CHATZ:  The fact is, you're right.  We didn't

10   respond because we tendered payment pursuant to our

11   understanding, so if we'd like to --

12         THE COURT:  And you didn't present any evidence

13   that it was not paying minimum wage.

14         MR. ALVANTAR:  Your Honor, if I may, so if I -- I

15   didn't receive a check that complies with the minimum wage,

16   but I am not able to negotiate that check.  I have not been

17   paid minimum wage.  That was the argument that --

18         THE COURT:  Oh, well, you lost me on that.  Now I

19   hear that you already made all the arguments that you

20   weren't paid timely and so forth.  In any case, I just

21   wanted to raise that that I'm not dealing with.

22         Okay.  You can have a seat.

23         MR. CHATZ:  Right.  So I guess the argument --

24         THE COURT:  The argument --

25         MR. CHATZ:  -- is because -- the argument is

Page                                                                10

1  because they didn't -- they didn't negotiate the check.  We

2  didn't properly pay them.

3          THE COURT:  So all the -- all the -- why don't --

4  yeah, I can tell you, I've read all the papers and you can

5  if you wish to briefly argue it, but I totally agree the

6  other side -- you can pay -- I've read the -- I'm not an

7  expert in it, but I read all those statutes and those

8  statutes are all talking about not being paid, you know.

9  And then yes, you should incur the wrath of all kinds of

10 things if you don't pay somebody, but they were paid.  And

11 so the idea that for whatever reason, I can understand the

12 type of work they do and so forth, they didn't want to cash

13 a check, but that doesn't mean they weren't paid.  Pay is

14 when you hand the check, so I totally disagree with your

15 whole argument about the interest and all the penalties.

16 That is not what the state law is all about.  They were

17 paid.  And I know -- I've read your papers so I know what

18 you're going to say that nobody -- but, yeah, and so forth.

19 I just don't buy that for a second.  They were paid.

20         MR. ALVANTAR:  If I may attempt to --

21         THE COURT:  Okay.

22         MR. ALVANTAR:  I respectfully --

23         THE COURT:  Because again I've read your papers.

24 I don't want you to re-read all what you've done.  I've

25 spent a lot of time, you know, figuring out the correct

Page                                                                11

1    answer.

2              MR. ALVANTAR:  Absolutely not, Your Honor.  I

3    will not waste your time.

4              THE COURT:  So they were paid, were they not?

5              MR. ALVANTAR:  They were issued a check which at

6    the time had sufficient funds according to the debtors.

7              THE COURT:  Okay.  So to my -- so they were

8    paid --

9              MR. ALVANTAR:  Well, according to --

10             THE COURT:  -- with -- collected on the check.

11             MR. ALVANTAR:  According to Ms. DeSchieke, which

12   we cited in our opposition, a California Court of Appeals

13   case which was issued three weeks ago, it is not

14   dispositive whether the debtor issues a check with

15   sufficient funds at the time the debtor -- or the employer

16   pays the employee.  If the employer subsequently learns

17   that the checks has become non-negotiable there is a duty

18   to cure that issue promptly.  And here it is uncontested

19   that the last day the debtor operated was December 8th.

20             So the employees received notice that the debtor

21   was going out of business.  A few of them went to cash

22   their checks next week.  This is mid-December, all

23   prepetition.  And Wells Fargo said you cannot negotiate

24   their check.

25             They promptly went to the debtor prepetition and

Page                                                                    12

1    they were told that -- not that the debtor was going to

2    file for bankruptcy, to basically be patient that the

3    checks would be reissued.  So at that point Harvest Moon

4    was on notice that the checks were non-negotiable.  And

5    even though initially, maybe months prior the checks had

6    been issued with sufficient funds, at that point Harvest

7    Moon had a duty to cure the non-negotiability of the

8    case -- of the checks.  And that's clear under Ms.

9    DeSchieke.

10           And I understand that before the time the checks

11   were issued they had sufficient funds, but as of mid-

12   December 20 -- 017.  Excuse me, Your Honor.  Harvest Moon

13   knew that the checks were non-negotiable and did nothing

14   about it.

15           THE COURT:  Okay.  Well, let me hear from -- what

16   you have to say in response to that?

17           MR. CHATZ:  Your Honor, these checks were months

18   old.  That these folks are that local, they leave town.

19   They chose not to negotiate the checks.  We filed a

20   motion --

21           THE COURT:  You said there was one that was a

22   week --

23           MR. CHATZ:  Well, we filed a motion post-petition

24   on an expedited basis to assure that they were paid.

25   Proofs of claim have been filed where they're asking for

Page                                                                    13

1    these damages.  All we want to do is to pay them, but we

2    can't pay them until we know what we're supposed to pay

3    them.

4              THE COURT:  What about that case you -- they

5    cited?

6              MR. CHATZ:  Your Honor, I don't even think it's

7    on point.  This is not the circumstance of that case.  This

8    is a bankruptcy case with a federal court involved.

9              THE COURT:  How is it different?

10             MR. CHATZ:  Your Honor --

11             MR. ALVANTAR:  The state law is the background

12   law that applies --

13             THE COURT:  Well, wait.  One at a time.  It's not

14   a debate here.

15             MR. CHATZ:  It's not a debate.  This is -- they

16   were paid.  That is the -- that is the difference with the

17   *DeSchieke* case.  Those other folks weren't paid.  This was

18   post-petition, I believe, under the *DeSchieke* case and the

19   debtors refused to pay.

20             We always did pay.  And so because a bank closes

21   our account and creates difficulties, we paid dozens of

22   employees.  As the court's record reflects, we had

23   $180,000 --

24             THE COURT:  Well, give me the facts again of that

25   case.

Page                                                                    14

1            MR. CHATZ:  Sorry?

2            THE COURT:  The case -- of the case.

3            MR. CHATZ:  Do you want to go ahead?

4            THE COURT:  Yes.

5            MR. CHATZ:  You can argue it.

6            MR. ALVANTAR:  Yes, Your Honor.  In *DeSchieke* it

7    was actually not a bankruptcy case.  It's --

8            THE COURT:  Well, I know that.

9            MR. ALVANTAR:  Right, right.  It's a paralegal

10   basically gave notice on a Friday, "I'm quitting; I hate

11   this law firm."

12           THE COURT:  Okay.

13           MR. ALVANTAR:  And the partners issued a check

14   for her, accrued paid time off timely within the statute.

15   She went to cash it a few days later and due to an innocent

16   clerical error she was unable to negotiate it.  She went

17   back to the law firm and sought a re-issued check informing

18   them that she could not negotiate it.

19           THE COURT:  Right.

20           MR. ALVANTAR:  And she sought penalties for

21   failure to be paid, I don't know, a few dollars.

22           THE COURT:  Right.

23           MR. ALVANTAR:  And the Court of Appeals agreed

24   with the paralegal that she was entitled to penalties not

25   because there was any culpability on the employer.  The

1  employer had paid -- timely paid the employee.  However,

2  once the employer learned of the non-negotiability of the

3  checks, the employer had a duty to promptly cure that

4  issue.

5          And here, Your Honor, it is a bankruptcy case so

6  it's a little bit different but Your Honor issued a weights

7  (phonetic) order in March of 2018 authorizing the debtors

8  to pay all -- not some, not subject to any conditions, all

9  undisputed wages --

10          THE COURT:  Right.

11          MR. ALVANTAR:  -- effective immediately.  And the

12  only reason they haven't done so is to leverage to

13  basically hold a few dollars that are owed to these

14  employees so they withdraw their penalties and damages

15  claims.

16          THE COURT:  Okay.

17          MR. ALVANTAR:  They could have easily satisfied

18  the undisputed portion and then objected to the remainder,

19  but they've chosen to, as Mr. Morris said on the phone to

20  co-counsel here, "If you don't withdraw everything with

21  prejudice we're not going to pay your undisputed wages."

22          THE COURT:  Okay.  Well, I -- okay, thank you.

23  Yeah, no, I agree.  This is not -- this -- I understand the

24  facts of that case and it's light years different than in

25  the bankruptcy context.  And so I am going to allow the

1  claim to just the claims.  I'm not going to allow under the

2  penalties.  As I said before, this case doesn't at all

3  change my opinion.  I don't disagree at all.  Not that it

4  would matter if I disagree or not, the Court of Appeals,

5  the state court, but those are not the facts here.  So I

6  will -- so that takes care of all of those.

7           MR. CHATZ:  That's correct, Your Honor.  We will

8  upload an order as soon as possible.

9           THE COURT:  Now, and I assume you will -- again,

10  it doesn't affect their rights to appeal or whatever, but

11  at least you will, I assume now you have my approval, will

12  issue the checks?

13          MR. CHATZ:  Yes.

14          THE COURT:  Okay.  All right.  And then --

15          MR. CHATZ:  We will upload an order --

16          THE COURT:  You'll do whatever you're going to

17  do, but at least at a minimum they should get their money

18  as soon as possible.

19          MR. CHATZ:  And if counsel will be willing to

20  receive those checks --

21          THE COURT:  I think I can --

22          MR. CHATZ:  -- that we can assure that there's

23  tender --

24          THE COURT:  I think the best way -- I think

25  everybody would agree, would they not, is that -- I forget

Page                                                                17

1  how many folks there are, but it's better for you to get

2  the money and then it would be a lot quicker for you to get

3  it to them.  Who knows where these people even are.

4            MR. ALVANTAR:  Right.  It would be my co-

5  counsel's (indiscernible) --

6            MR. CHATZ:  All right.  What we'll do, if I could

7  impose on you -- sorry, Your Honor.

8            THE COURT:  Yeah.

9            MR. CHATZ:  If you could communicate with

10 Mr. Morris we'll upload an order either today or tomorrow.

11 As soon as that's all taken care of --

12            THE COURT:  Right.  That would be the most

13 efficient and fair way.

14            MR. CHATZ:  -- we'll issue checks.

15            THE COURT:  Right.  That'd be the most efficient

16 and fair way, so --

17            MR. ALVANTAR:  Yes, that's agreeable.

18            MR. CHATZ:  Thank you very much.

19            THE COURT:  Thank you very much.  Okay.

20            MR. CHATZ:  All right.  If we want to go onto the

21 other contested issues so counsel doesn't have to spend

22 more time here we could go to --

23            THE COURT:  Well, I assume so.

24            MR. CHATZ:  -- #39.00.

25            THE COURT:  I mean, you're always welcome --

Page                                                          18

1              MR. CHATZ:  Yeah.  You're welcome to stay.

2              THE COURT:  -- but I think you probably have

3    better things to do.

4              MR. ALVANTAR:  Well, thank you, Your Honor.

5              THE COURT:  Yes.

6              MR. CHATZ:  Appreciate it.

7              THE COURT:  Yes.

8              MR. CHATZ:  We have #39.00.

9              THE COURT:  All right.

10             MR. CHATZ:  Which is the Harold Crawford fully

11   briefed objection.

12             THE COURT:  Right.  And as Your Honor and I have

13   discussed before, PACA is very specific.  It needs to be

14   followed strictly.  We hired special counsel in this case

15   because of its unique nature and this case specifically I

16   don't think there's a dispute.  There's no executed

17   confirmation of any relationship --

18             THE COURT:  I understand.

19             MR. CHATZ:  -- so I don't know -- we'd ask that

20   our objection be sustained.

21             THE COURT:  All right.

22             MR. SHEMANO:  Your Honor?

23             THE COURT:  Yes.

24             MR. SHEMANO:  I'd like to respond to an argument

25   in the reply papers that we didn't --

Page                                                                          19

1          THE COURT:  All right.

2          MR. SHEMANO:  -- get the opportunity to respond

3   to.  I think there is -- and I will assume some

4   responsibility for not identifying this confusion in our

5   initial objection, but there's a fundamental confusion here

6   about two separate parts of the regulation.  And whether

7   intentionally or unintentionally they're conflating two

8   separate parts of the regulation.  Now, I'd just like to

9   explain it and I think it will hopefully help you

10  adjudicate this dispute.

11          The regulation talks about the duty of the broker

12  to prepare this confirmation memorandum after the parties

13  reach their deal and that the confirmation memorandum is

14  supposed to state who the broker was the broker for.

15          THE COURT:  All right.

16          MR. SHEMANO:  And then the regulation says if the

17  confirmation or memorandum of sale does not contain such

18  information the broker shall be presumed to engage by the

19  buyer.  And they're the seller; the other party is the

20  buyer and that's where they say, well, you didn't do that

21  so you're not the broker for us.  Therefore, you lose.

22          And, Your Honor, I will concede that for purposes

23  of this hearing and for purposes of this statute that

24  Harold Crawford did not send a confirmation memorandum

25  stating that they are the broker for the debtor and,

Page                                                                    20

1   therefore, the debtor is liable for the brokerage fee.   I

2   will concede that.

3          THE COURT:   The debtor is not liable for --

4          MR. SHEMANO:   Not liable as the broker because

5   the statute says --

6          THE COURT:   I understand.

7          MR. SHEMANO:   -- the confirmation or memorandum

8   of sale does not contain such information.   Right?   The

9   broker shall be presumed to be engaged (phonetic) by the

10  buyer.

11         THE COURT:   Right.

12         MR. SHEMANO:   And then it says -- this is the key

13  provision that they did not highlight to you and I

14  apologize, we did not highlight to you.   It says:

15         "Unless otherwise agreed and confirmed, the

16      broker will be entitled to payment of brokerage fees

17      from the party by whom it was engaged to act as

18      broker."

19         So their saying is, okay, you didn't comply

20  with -- you didn't set a confirmation of memorandum rights,

21  so that means you're presumed to be the broker for the

22  buyer and therefore presumptively the buyer has to pay you,

23  not us.   I get that.   But this regulation says, "unless

24  otherwise agreed and confirmed."

25         So what the regulation says is, there's no

Page                                                                     21

1  statutory PACA requirement that the broker only be paid by

2  the buyer or by the party who engaged --

3          THE COURT:  But you have to put it --

4          MR. SHEMANO:  -- the broker.

5          THE COURT:  But you've got to put it in writing

6  and who will be paid --

7          MR. SHEMANO:  No, no, no, no.  It only says you

8  have to put -- if you want to say that you are the -- if

9  you want to overcome the presumption -- there's a

10 presumption that the buyer pays the brokerage fee.

11         THE COURT:  Right.

12         MR. SHEMANO:  Then there's a presumption that if

13 you don't do a confirmation memorandum, the buyer -- you

14 work for the buyer.  So --

15         THE COURT:  I understand.

16         MR. SHEMANO:  There's a presumption.  But then it

17 says there's no requirement under PACA that the buyer pay

18 the broker fee or even that the party who engaged the

19 broker paid the broker fee.  It's only a presumption unless

20 otherwise agreed by the parties.  That's what the

21 regulation says.

22         THE COURT:  All right.

23         MR. SHEMANO:  So what we have here, Your Honor --

24 and it's undisputed, all right.  It's not a factual

25 dispute.  There's a factual dis -- there's a fact -- a fact

1  that Harold Crawford is engaged by the buyer.  Says, look,

2  we have something, we want to sell it -- want to buy it.

3  Go in the market, find somebody to sell it to us.  That's

4  all done by Harold Crawford.  They do the service.  And

5  there's an understanding, which we describe as a course of

6  dealing between the parties traditional in the industry

7  that the parties know who's going to pay the fee.  It's all

8  done -- both documented as part of the transaction

9  electronically.  And at the conclusion of that they get an

10 invoice saying, we're the broker.  Part of the deal is you

11 pay the per carton fee.  And that's the way it was done,

12 Your Honor, for over ten years without dispute.

13        This $79,000 claim is just an add-on to over a

14 million dollars of work in which Harold Crawford engaged as

15 the broker in deals in which they're the seller.  So

16 they're making a hype -- they're not saying, we didn't --

17 my client did not provide the brokerage service.  They're

18 not --

19        THE COURT:  I understand that.

20        MR. SHEMANO:  Right.

21        THE COURT:  I've read all the papers.  I reviewed

22 them --

23        MR. SHEMANO:  Right, right.  But neither party

24 highlighted that part of the regulation that said even if

25 you do not comply with the confirmation matter (phonetic),

Page                                                                                    23

1   so that means you are presumed to be the broker for the

2   buyer and the buyer is presumed to be the party who's going

3   to pay you.  The parties can agree otherwise.  And because

4   of that --

5             THE COURT:  You're saying by a course of conduct

6   they agreed.  Is that your argument?

7             MR. SHEMANO:  Absolutely.  By whom --

8             THE COURT:  No, I understand.

9             MR. SHEMANO:  Well, absolutely.  There is no --

10  we agreed.  There is no writing over 15 years -- over 12

11  years of conduct that said in advance, you're going to pay

12  it.  It's all done through the after-the-fact invoice.

13  They've always paid it.  We've always relied upon it.

14            THE COURT:  I understand.

15            MR. SHEMANO:  And if -- and -- so I'd point out,

16  this (indiscernible) on the industry and if we rule -- if

17  you rule that that's not good enough, I mean, really,

18  really -- because then upset kind of a market course.  This

19  is how people do it.  I just -- we have to get --

20  clients -- time to get compensated from somebody and

21  they -- their course of conduct said they agreed we're

22  going to benefit from your service; they should pay it.

23            THE COURT:  All right.  Thank you.  Well, you --

24  that's what I understood your argument all along.

25            MR. SHEMANO:  Yeah.

Page                                                                    24

1           THE COURT:  What about that?

2           MR. CHATZ:  We responded in our pleadings and the

3   pleadings said you didn't evidence this, there's no --

4           THE COURT:  But in all fairness --

5           MR. CHATZ:  There's no con --

6           THE COURT:  There's claim --

7           MR. CHATZ:  There's no confirmation.

8           THE COURT:  Wouldn't it be -- I mean, I

9   understand that --

10          MR. CHATZ:  This is post-CRO work.  They know

11  what the rules are.

12          THE COURT:  Yeah, but CRO went down a long time

13  ago.  When did that one come into effect?

14          MR. CHATZ:  In 2017.

15          THE COURT:  What, the new statute?

16          MR. CHATZ:  No, the package statutes were --

17          THE COURT:  Oh, no, no, no.  See --

18          MR. CHATZ:  Package statutes were well before we

19  were born.

20          THE COURT:  The statute was amended, what, 20 or

21  whatever --

22          MR. CHATZ:  Yeah, exactly.

23          THE COURT:  So you're talking about --

24          MR. CHATZ:  I --

25          THE COURT:  -- the CRO came in because of the --

Page                                                                          25

1   well, there was a death of -- to parties and I --

2           MR. CHATZ:  Right.

3           THE COURT:  The history of it.

4           MR. CHATZ:  I don't think course of conduct is

5   relevant --

6           THE COURT:  Well --

7           MR. CHATZ:  -- to the statute.  The statute is

8   rather specific.

9           THE COURT:  But you did read --

10          MR. CHATZ:  The cal --

11          THE COURT:  Counsel just read the statute.

12          MR. CHATZ:  Yeah, and the statute says --

13          THE COURT:  Unless otherwise --

14          MR. CHATZ:  -- unless otherwise agreed.

15          THE COURT:  -- agreed.  And he's arguing that

16  the -- otherwise agreed by years of agreement that this is

17  how it's going to work.  I mean, that's basically the

18  argument.

19          MR. CHATZ:  But I don't think that you override

20  the particular terms as Your Honor looked at it when we

21  filed our response.  He's re-arguing what he argued in his

22  response.  And the statute is rather clear; there do need

23  to have a confirmation of sale.  In order to collect --

24          THE COURT:  And unless -- again, unless --

25          MR. CHATZ:  In order to coll --

Page                                                                    26

1          THE COURT:  Let me stop you.  Unless as

2    otherwise --

3          MR. CHATZ:  They --

4          THE COURT:  -- agreed by the parties.

5          MR. CHATZ:  They filed a proof of claim under

6    PACA.  They did it -- if they had a different proof of

7    claim they wished to file they could have done it.

8          THE COURT:  Well, the claim is for fees.  I'm not

9    sure.  Does it matter if it's under PACA?

10          MR. CHATZ:  I -- PACA -- PACA is the specific

11    statute.

12          THE COURT:  The way I read it the claim -- and

13    everybody knows, you know, what the claim is for.

14          MR. CHATZ:  Excuse me.  My --

15          THE COURT:  Whether it's technically in the PACA

16    or whatever, sure.  I had some familiarity.  Not nearly as

17    much as you gentlemen, but over the years I have some

18    familiarity how PACA works.

19          But don't you think that again from his

20    standpoint the -- it's obvious.  I'm not faulting anybody.

21    I agree with the complaint -- the claim.  Just so I

22    understand the way it worked, here is this stepping back as

23    I get to do as the judge of what's really going on here and

24    say, well, something new.  People coming in.  I guess after

25    the original people that set up the business died.  To say

1  the least, unfortunate.  They now suddenly realize it was

2  improper.

3          But the fact of the matter is that the -- that if

4  you really wanted to change things wouldn't it be a good

5  thing to change things before he went out and did the work?

6          MR. CHATZ:  Your Honor, they always had a right

7  to get paid by the seller.  If you could give me one

8  second, my client, the CRO, is here.  He's a PACA expert

9  here.  We don't have our PACA lawyer here.  If you wish to

10 file the surreply, I wish he would have.  Could you give me

11 one second?

12         THE COURT:  Well, no, let me stop you.  This is

13 not -- this is a hearing on -- this is a motion --

14 objection on the facts of --

15         MR. CHATZ:  Right.  This is the facts.  The facts

16 are --

17         THE COURT:  Yeah.

18         MR. CHATZ:  -- in our view the statute is a bar

19 to their claim.

20         THE COURT:  Okay.  Well, I disagree.  Again, and

21 so this is not -- you know, I am not faulting anybody.  To

22 say the least how this developed with the death of the

23 people starting this wonderful business and so forth.  But

24 it appeared to be that, yes, I -- I agree with the claimant

25 that -- that is an agreement, that is, a course of conduct

Page                                                                      28

1  over years.  You can have a seat.  There's not --

2          MR. CHATZ:  Oh, no, that's fine.

3          THE COURT:  -- a debate.  But it does seem to me

4  my -- I'm the only, again, neutral person here on this.  It

5  seems to me -- I understand the arguments and that -- but

6  the fact of the matter is this is how things were done and

7  if things were -- want to be changed, it should have been

8  changed.  Any notice to the claimant prior to doing the

9  efforts would have done it.  I'm not faulting anybody for

10 not doing it.  There's a lot more important things quite

11 frankly going on in this case, namely selling all the

12 berries and all the things.  And so I understand.  I'm not

13 faulting anybody.

14         But I'm going to overrule the objection to the

15 claim.  I think the claim is --

16         MR. CHATZ:  Okay.  Thank you, Your Honor.

17         THE COURT:  -- well taken.  Interesting.  I must

18 admit it was an interesting case but I had already -- that

19 was my leaning in any way before, so -- but I think that

20 there was that implicit agreement, so that -- of all of

21 them, this was the most interesting reading through all of

22 this.

23         So anyway, it is -- it is what it is and so

24 there's -- not going to take anymore testimony.  That's the

25 wonderful thing about doing this.  The facts as I know are

Page                                                                                          29

1    on the table and so that's what I'm going to do.

2              MR. CHATZ:  I just wanted for clarification this

3    is being treated as an unsecured claim.

4              THE COURT:  Oh, yeah.

5              MR. CHATZ:  Thank you.

6              THE COURT:  Well, yes, yes.  It's -- yes.

7    Remember this is not -- he hasn't -- he's -- right.  The

8    difference between selling berries and things and having a

9    PACA claim, yes, this is -- yeah, I guess you understand

10   that.  That's obviously -- this is not a --

11             MR. SHEMANO:  We understand that.  We --

12             THE COURT:  Yeah, this is a claim for its fees.

13   Right.  It's not the -- it's not --

14             MR. SHEMANO:  It's for a claim on the contract.

15             THE COURT:  Right, right.  On the contract, yes.

16             MR. CHATZ:  All right.  Thank you.

17             THE COURT:  Yeah.  Okay.  I thought that was

18   obvious, but nothing is --

19             MR. CHATZ:  I just want to make sure it's clear.

20             THE COURT:  Yeah.  No, no, he's not claiming any

21   security on the -- he does -- he has not provided

22   perishable goods.  Yeah.

23             So anyway, so that's going to be -- if you'll

24   prepare that order --

25             MR. CHATZ:  Yes.



Page                                                          30

1          THE COURT:  -- I've stated it on the record.  I

2   don't think you need --

3          MR. CHATZ:  We'll prepare the order, Your Honor.

4          MR. SHEMANO:  We'll work on it together.

5          THE COURT:  I think -- I mean, it isn't that I

6   don't trust you, but I -- you can work it out, but it's

7   very simple.  You don't have to state -- oh, you can state

8   it on the record I've stated the reasons on the record --

9          MR. CHATZ:  Right.

10         THE COURT:  -- and the claim is allowed.  Your

11  objection is overruled.  That's a one-liner.  I can do

12  it --

13         MR. CHATZ:  No, I don't want you to have to do

14  that.  There's a question, though, with respect to fees and

15  interest on this claim --

16         THE COURT:  I wasn't even focusing on that.  It

17  was just the amount of the claim.

18         MR. CHATZ:  Right.  And if it's just the amount

19  of the claim --

20         THE COURT:  That's all I'm talking about.  Wasn't

21  that --

22         MR. CHATZ:  -- we're filing (indiscernible)

23  penalties and interest --

24         THE COURT:  -- it?

25         MR. SHEMANO:  No, there's a small portion of the

1   claim amount that includes interest because the claim has

2   not been paid.

3           THE COURT:  Right, right.  And --

4           MR. SHEMANO:  Well, not --

5           THE COURT:  Prepetition interest.

6           THE COURT:  Yeah, prepetition interest.  Right.

7   That would be entitled.

8           MR. SHEMANO:  And there's a claim for a few

9   thousand dollars of attorney's fees dealing with the claim

10  and that's --

11          THE COURT:  Well, that -- that is a little bit --

12  I've forgotten about that.  Since there's no contract I

13  don't see being entitled to attorney's fees.

14          MR. SHEMANO:  Well, there is an argument under

15  PACA.  I think what we'll do, Your Honor --

16          THE COURT:  Well, I can tell you without -- I

17  would not allow the attorney's fees.  The interest is what

18  it is and -- on the debt basically.  I'll leave it at that.

19          MR. SHEMANO:  Okay, Your Honor.  We'll --

20          THE COURT:  Because I'd rather -- I want to get

21  it done today.

22          MR. SHEMANO:  Understood.

23          THE COURT:  I don't want --

24          MR. SHEMANO:  We'll solve this.

25          THE COURT:  Okay.

Page                                                                        32

1           MR. CHATZ:  Thank you, Your Honor.

2           THE COURT:  Okay.  Thank you very much.

3           MR. CHATZ:  Okay.  Back to claim #35.00, Your

4    Honor.

5           THE COURT:  Okay.

6           MR. CHATZ:  Two of the matters were resolved --

7    actually three now have been resolved:  Gregorio Martinez,

8    BNSF and Vegetable Growers.  As to the others we'd like to

9    submit a draft order disallowing all of them because

10   they've done --

11          THE COURT:  All right.  Right.  Because I thought

12   we had already --

13          MR. CHATZ:  -- respond --

14          THE COURT:  -- the only one I had a question

15   about was the one -- the late filed claim --

16          MR. CHATZ:  Right.

17          THE COURT:  -- that yes, absolutely.

18          MR. CHATZ:  Thank you.  As to claim #36.00,

19   Travelers where they filed an unliquidated claim in

20   multiple -- in all three of the cases --

21          THE COURT:  Right.

22          MR. SHEMANO:  -- we're going to with Your Honor's

23   permission file a draft order disallowing all those claims.

24          THE COURT:  All right.  Yes.

25          MR. CHATZ:  We've not received a response on that

Page                                                                33

1   as well.

2              THE COURT:  Okay.

3              MR. CHATZ:  #37.00 there are -- these are the

4   duplicate claims of the California Department of Food &

5   Agriculture.  We will allow the claim in the Eclipse case

6   and not in the other two cases.

7              THE COURT:  All right.

8              MR. CHATZ:  All right.  And so we'll submit a

9   draft order on that.  #38.00 which is Airgas, a portion of

10  that claim was paid by the purchaser.  The balance should

11  be disallowed as the claimant has failed to mitigate by

12  refusing to pick up their product.  The claimant is not

13  here and we'd ask that we can submit an order in that

14  regard.

15             THE COURT:  Yes.

16             MR. CHATZ:  And I think that's it.

17             THE COURT:  Well, I'm glad you tied them all

18  together.

19             MR. CHATZ:  Yes.

20             THE COURT:  We were concerned with so many

21  things.  Thank you very much.  Anything else on this?

22             MR. CHATZ:  Mr. Fritz, anything?

23             MR. FRITZ:  No, Your Honor.

24             THE COURT:  Now, let me ask you this.  It's not

25  before me at the moment, so what's left in the case?



Page                                                                34

1           MR. CHATZ:  We have more claim objections --

2           THE COURT:  Okay.  Remember, it's always a

3    problem --

4           MR. CHATZ:  -- coming up.

5           THE COURT:  -- setting for calendar because we

6    just -- we don't know.  We only have so much time and there

7    are other people, so what is -- what is --

8           MR. CHATZ:  Right.  We have a matter that's

9    #45.00, which is the APN matter.  (Indiscernible) Nutrition

10   where we just had APN sign the settlement agreement today.

11          THE COURT:  All right.

12          MR. CHATZ:  We'd like to continue that.  We have

13   another date on September 5th --

14          THE COURT:  That's when you have other hearings

15   as well?

16          MR. CHATZ:  -- for claims.  Yes.

17          THE COURT:  At what time?

18          MR. CHATZ:  I believe it's 2:00 p.m. as well.

19          (Telephone dial tone sounds.)

20          THE COURT:  Just had a new phone system hooked

21   in.  We're still working it out.  Trying to figure out how

22   to use my own phone.

23          MR. CHATZ:  Right.  So we have claim objections

24   on I believe the 5th and I believe it's the 21st.  I could

25   be wrong with that date.  And then we have confirmation on

1  October 3rd.  We'll probably ask you with the next date for

2  another date for claims resolution later in October.

3          THE COURT:  Okay.  So a portion of number --

4  which  of the claim is on -- now, we're on #45.00?

5          MR. CHATZ:  We're on #45.00.  We'd like to put

6  over to September 5th.

7          THE COURT:  Okay.  All right.

8          MR. CHATZ:  Okay.  At 2:00 p.m.

9          THE COURT:  Okay.  Is that it?

10          MR. CHATZ:  That's it.

11          THE COURT:  Okay.  Thank you.

12          MR. CHATZ:  Thank you.

13          THE COURT:  And again, thank you very much for

14  all your hard work and it's been a tough case, but so far

15  from my standpoint --

16          MR. CHATZ:  We're --

17          THE COURT:  -- everything considered it's a

18  successful case.

19          MR. CHATZ:  Yes, and I'd like to thank Mr. Fritz.

20  They got us the letter, the plan and disclosure statement.

21  It went out today to creditors with the ballot, their

22  letter.

23          THE COURT:  Great.

24          MR. CHATZ:  So hopefully they'll be receiving

25  them and voting with alacrity.  Hopefully we'll be here --

Page                                                                          36

1           THE COURT:  And quickly as well.

2           MR. CHATZ:  -- on October 3rd on the

3    confirmation.

4           THE COURT:  Yes.

5           MR. CHATZ:  Thank you.

6           THE COURT:  Thank you very much.

7    (End at 3:14 p.m.)

8                     * * * * * * *

9           I certify that the foregoing is a correct

10   transcript from the electronic sound recording of the

11   proceedings in the above-entitled matter.

12

13

14   _____   Date:  8/31/2018

15   RUTH ANN HAGER, C.E.T.**D-641

16

17

18

19

20

21

22

23

24

25

